## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

JAMES COURY HOLMES,

        Plaintiff,

    v.

HARRELL WATTS; RAYMOND E. HOLT;
JOHN V. FLOURNOY; KATRINA
HECKARD; and AUDREY ANDERSON,

        Defendants.

CIVIL ACTION NO.: 2:15-cv-155

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"), submitted a Complaint in the above captioned action pursuant to 28 U.S.C. § 1331, Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 402 U.S. 388 (1971), and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et seq*. ("FTCA"). For the reasons which follow, I **RECOMMEND** that the Court **DISMISS** this Complaint for failure to state a claim. Additionally, the Court should **DENY** Plaintiff leave to appeal *in forma pauperis*.

## BACKGROUND

Plaintiff originally filed this action in the United States District Court for the District of Columbia. (Doc. 1.) However, because Plaintiff contested the conditions of his confinement at FCI Jesup, which is located in this District, that court transferred the case to this Court. (Doc. 4.) Plaintiff contends that he was assigned to the upper bunk in a three man cell as punishment for his refusal to agree to a "restitution payment increase." (Id. at p. 3.) He contends that assigning him and two other inmates to a cell that is approximately eighty-five square feet violates the

Bureau of Prisons' own policies.  Id.  Plaintiff contends that on the top bunk he has approximately 28 inches of room, whereas someone in a two man cell has "an average of 38 inches."  (Id. at p. 6.)  Plaintiff will remain in the three man cell until he complies with Defendant Audrey Anderson's restitution payment schedule.  Id.

Plaintiff has raised his concerns regarding three man cells to Defendants through the administrative grievance process.  (Id. at pp. 3–5.)  In response, the Regional Director has explained that "FCI Jesup, along with other federal prisons, incorporated three man cells to accommodate the significant increase in the inmate population."  (Doc. 1-4, p. 2.)

Plaintiff contends that Defendants have violated his right to equal protection, as other inmates in a cell of approximately eighty-five square feet have only one cellmate.  (Id. at p. 5.) He also contends that Defendants have violated his Eighth Amendment right to be free from cruel and unusual punishment.  Id.

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under Bivens and the FTCA. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress.  Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted.  28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii).  Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity.  Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted

2

or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and,

therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

As an initial matter, this Court must give deference to prison officials on matters of prison administration and should not meddle in issues such as the contents of a prisoner's file and a prisoner's placement. Courts traditionally are reluctant to interfere with prison administration and discipline, unless there is a clear abuse of discretion. See Procunier v. Martinez, 416 U.S. 396, 404–05 (1974) ("Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration [because] . . . courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform."), *overruled on other grounds by* Thornburgh v. Abbott, 490 U.S. 401 (1989). In such cases, "[d]eference to prison authorities is especially appropriate." Newman v. State of Ala., 683 F.2d 1312, 1320–21 (11th Cir. 1982) (reversing district court's injunction requiring release of prisoners on probation because it "involved the court in the operation of the State's system of criminal justice to a greater extent than necessary" and less intrusive equitable remedy was available); see also Thornburgh, 490 U.S. at 407–08 ("Acknowledging the expertise of these officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators

who, in the interest of security, regulate the relations between prisoners and the outside world."); Bell v. Wolfish, 441 U.S. 520, 547 (1979) (acknowledging that courts have "accorded wide-ranging deference [to prison administrators] in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 129 (1977) ("Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry."); Bradley v. Hart, No. CV513-127, 2015 WL 1032926, at *10 (S.D. Ga. Mar. 9, 2015) ("It does not appear to be appropriate for this Court to order that prison officials remove entries from Plaintiff's file, which may or may not be accurate.").

## I.    **Bivens** Claims

In Bivens, the United States Supreme Court "recognized for the first time an implied private action for damages against federal officers" for violations of certain constitutional rights. Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001).  A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983.  An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct.  Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability.  A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law.

### A.    **Official Capacity Bivens Claims**

"Bivens only applies to claims against federal officers in their individual capacities; it does not create a cause of action for federal officers sued in their official capacities."  Sharma v. Drug Enf't Agency, 511 F. App'x 898, 901 (11th Cir. 2013) (citing Malesko, 534 U.S. at 69–71).

Consequently, the Court should **DISMISS** Plaintiff's <u>Bivens</u> claims against Defendants in their official capacities.

      **B.**      **Eighth Amendment <u>Bivens</u> Claims**

The cruel and unusual punishment standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). Generally speaking, however, "prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain." <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotations omitted). Thus, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981). The Constitution does not mandate comfortable prisons. <u>Id.</u> Prison conditions violate the Eighth Amendment only when the prisoner is deprived of "the minimal civilized measure of life's necessities." <u>Id.</u> at 347. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." <u>Id.</u> However, "[c]ontemporary standards of decency must be brought to bear in determining whether a punishment is cruel and unusual." <u>Bass v. Perrin</u>, 170 F.3d 1312, 1316 (11th Cir. 1999).

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard, and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. <u>Wilson v. Seiter</u>, 501 U.S. 294, 297–99 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission. . . result[s] in the denial of the minimal civilized measure of life's necessities." <u>Id.</u> at 298 (citing <u>Rhodes</u>, 452 U.S. at 347). "In order to establish the imposition of cruel and unusual punishment,

a prisoner must prove two elements—that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted)).[1]

Double or triple celling of inmates is not per se unconstitutional. Evans v. St. Lucie Cty. Jail, 448 F. App'x 971, 975 (11th Cir. 2011) ("The Supreme Court has rejected the notion that 'double celling'—putting twice the number of prisoners in a cell—is unconstitutional[.]") (citing Rhodes, 452 U.S. at 347); Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991) (citing Rhodes, 452 U.S. 337); Batts v. Martin, 825 F.2d 406 (4th Cir. 1987) ("Double or triple celling of an inmate does not in and of itself constitute cruel and unusual punishment."); Mathias v. Simpkins, No. 7:07cv–0031, 2007 WL 1577336 * 2 (W.D. Va. May 31, 2007) ("It is clear that double or triple celling of inmates is not per se unconstitutional.").

Plaintiff has not alleged any facts that could plausibly lead to the conclusion that his placement in a three man cell offends society's evolving standards of decency or that any prison official knowingly ignored an excessive risk to his health and safety by placing him in such a cell. See Webb v. DeBoo, No. 2:09CV107, 2012 WL 1068213, at *6 (N.D.W. Va. Jan. 6, 2012), report and recommendation adopted, No. 2:09-CV-107, 2012 WL 1067971 (N.D.W. Va. Mar. 29, 2012) (dismissing claims based on three man cells and stating "plaintiff has failed to show he was ever subjected to any unsanitary or dangerous condition that rose to the level of an Eighth

---

[1] The Court notes "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304 (1991). However, absent such interaction, the Court need not consider each condition as part of the overall conditions challenged on an Eighth Amendment claim." Id. at 305 ("To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes.).

Amendment violation."). Even accepting Plaintiff's allegations as true and viewing them in the light most favorable to him, Defendants have not denied him the minimal civilized measures of life's necessities. He contends that by being placed on the third bunk in a three man cell, he has less room than other prisoners. However, this discomfort does constitute the wanton and unnecessary infliction of pain. See Smith v. Does, No. CIV.A. 5:06-CV-00065, 2009 WL 305099, at *4 (S.D.W. Va. Feb. 6, 2009) (finding that Plaintiff's allegations including inadequate space between beds and inadequate "head space" for inmates on top bunks "do not rise to the level of an Eighth Amendment claim").

Plaintiff repeatedly references the Bureau of Prisons' Program Statement 1060.11 in his Complaint. (Doc. 1, p. 4.) As explained in Section II below, Plaintiff misinterprets the import of this Program Statement. Moreover, a claim that the Bureau of Prisons or one of its employees violated a regulation or policy fails to rise to the level of a constitutional violation and is not cognizable under Bivens. See Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986) (mere failure to follow regulations does not amount to constitutional violation); McDonald v. United States, No. CIV.A. 2:07CV82, 2008 WL 4615017, at *4 (N.D.W. Va. Oct. 14, 2008) (dismissing Bivens claim based on three man cell and holding that defendants' alleged violation of BOP program statement not cognizable under Bivens); Pickett v. Aramark, No. 5:08CV111/RS/EMT, 2008 WL 2686330, at *2 (N.D. Fla. June 27, 2008) ("failure to follow regulations does not necessarily amount to a constitutional violation.").

For all of these reasons, the Court should **DISMISS** Plaintiff's Eighth Amendment claims asserted under Bivens.

## C.      Equal Protection Claims

Plaintiff argues that Defendants have violated the equal protection clause by placing two other men in his cell, whereas other prisoners with the same cell size have only one cellmate.

The Equal Protection Clause of the Fourteenth Amendment provides that persons similarly situated should be treated alike.  See, e.g., City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  A prisoner asserting an equal protection claim must demonstrate that he is similarly situated with other prisoners who received more favorable treatment and that his discriminatory treatment was based upon some constitutionally protected interest.  Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001).  The law requires that "[t]o be 'similarly situated,' the comparators must be prima facie identical in all relevant respects."  Grider v. City of Auburn, Ala., 618 F.3d 1240, 1264 (11th Cir. 2010) (quotation and emphasis omitted).

According to Plaintiff, the prisoners in the two man cells are not similarly situated to him because they do not have any issues regarding their payment schedules or other disciplinary issues.  Even assuming, *arguendo*, that the prisoners in the two man cells could be considered similarly situated comparators, Plaintiff has not alleged that the discriminatory treatment was based on a constitutionally protected interest.  Plaintiff does not allege discrimination based on race or some other interest; rather, he states that he has been placed in the cell due to his failure to agree to Defendant Anderson's restitution schedule.  Consequently, Plaintiff has failed to allege a cognizable claim for violation of his constitutional rights to equal protection, and the Court should **DISMISS** his equal protection claims.

### D.  Due Process Claims

Plaintiff does not cite the due process clause in his Complaint. However, in an abundance of caution, the Court will assess whether his factual allegations state a cognizable claim for denial of due process.

#### 1.  Procedural due process

An inmate states a cognizable claim for the deprivation of his procedural due process rights under the Fourteenth Amendment when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and constitutionally inadequate process. Shaarbay v. Palm Beach Cty. Jail, 350 F. App'x 359, 361 (11th Cir. 2009) (citing Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556, (1974). Rather, "a disciplinary proceeding, whose outcome will 'impose[ ] atypical and significant hardship on the inmate' must ensure the following due process rights: (1) advance written notice of the claimed violation, (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken, and (3) an opportunity to call witnesses and present documentary evidence in his defense." Asad v. Crosby, 158 F. App'x 166, 173 (11th Cir. 2005) (citing Wolff, 418 U.S. at 563–67).

Plaintiff alleges that his placement in a three man cell was punitive in nature. He contends that he was placed there because he did not comply with Defendant Anderson's restitution schedule. However, Plaintiff has not plausibly alleged that his placement in the three man cell has created an atypical and significant hardship. See Cardona v. Bledsoe, 596 F. App'x 64 (3d Cir. 2015) (conditions of federal prisoners confinement in prisons Special Management

Unit, including living space below national standards and double-celling prisoners, did not impose atypical and significant hardships in relation to ordinary incidents of prison life); Webb, No. 2:09CV107, 2012 WL 1068213, at *6 ("Moreover, placement in a three-man cell is not an atypical or significant hardship that would entitle the plaintiff to any Due Process protections."); Evans v. Farley, No. 4:11CV1226, 2011 WL 5023266, at *3 (N.D. Ohio Oct. 19, 2011) ("[T]he Court finds that plaintiff's assignment to a three-man cubicle that was designed for two inmates was not such an 'atypical and significant hardship.' Plaintiff has not alleged that his housing situation has led to the deprivation of any other basic need or constitutional right. Rather, it is the triple-celling, in and of itself, that forms the basis of plaintiff's due process claim."). Because Plaintiff has failed to allege that any disciplinary measures taken against him have resulted in an atypical or significant hardship, he cannot sustain a procedural due process claim against Defendants.

### 2.    Substantive Due Process

"The Due Process Clause protects against deprivations of 'life, liberty, or property without due process of law.'" Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999) (quoting U.S. CONST. AMEND. XIV). The Supreme Court has identified two situations in which a prisoner can be deprived of liberty such that the protection of due process is required: (1) there is a change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court; and (2) the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 1290–91 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

In Sandin, the United States Supreme Court addressed whether the punishment inmate Conner received for a disciplinary violation was sufficient to invoke a liberty interest protected by the Due Process Clause. 515 U.S. at 472. Following a disciplinary conviction, Conner received 30 days' disciplinary segregation in a Special Housing Unit. Id. at 475. After noting that the segregation was a form of punishment, the Court concluded that it was not a dramatic departure from the conditions of Conner's indeterminate sentence. Id. at 485. The Supreme Court held there is no right inherent in the Due Process Clause for an inmate not to be placed in disciplinary segregation nor is there a state-created liberty interest to be free from disciplinary segregation. Id. at 487. The Court determined that the conditions of disciplinary segregation at the prison where Conner was incarcerated were virtually indistinguishable from the conditions of administrative segregation and protective custody. Id. at 486. Also, the Court noted that the conditions of disciplinary segregation were not markedly different from the conditions in general population. Id. The Court concluded that the conditions of disciplinary segregation did not impose an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. Thus, the Court determined that Conner was not entitled to due process protection. Id. at 487. The Court observed that this holding was a return to the due process principles of Wolff and Meachum v. Fano, 427 U.S. 215 (1976), which required an inmate to suffer a "grievous loss" before a liberty interest could be found. Id. at 478–83. The Sandin Court ruled that in the future, liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, (citations omitted), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 480, 484; see also Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998) (affirming that two

months' confinement to administrative segregation was not a deprivation of a constitutionally protected liberty interest).

An inmate, therefore, has a liberty interest related to his confinement only if the state has created a liberty interest through the nature of the conditions. <u>Sandin</u>, 515 U.S. at 487. To determine whether the state has created a liberty interest, courts must look to the nature of the conditions of the confinement in relation to the ordinary incidents of prison life, rather than to the language of the regulations regarding those conditions. <u>Id.</u> at 484; <u>Wallace v. Hamrick</u>, 229 F. App'x 827, 830 (11th Cir. 2007).

In the present action, Plaintiff has not plausibly alleged that his placement in a three man cell deprives him of a liberty interest inherent in the Constitution. Plaintiff fails to state what liberty interest is at stake from his placement in the cell. Moreover, as set forth above, Plaintiff fails to set forth any facts which plausibly could lead to the conclusion that the conditions of the three man cell impose an atypical and significant hardship on him relative to the ordinary incidents of prison life. <u>See</u> <u>Uhde v. Wallace, et al.</u>, No. 07–cv–714, 2008 WL 4643351 * 1, *7 (W.D. Wis. March 26, 2008) (placement in three-bed cells is not an atypical or significant hardship as compared to the ordinary hardships of prison life and an inmate does not have a liberty interest in being moved from a three-man cell) (discussing <u>Sandin</u> and <u>Bell</u>). Thus, Plaintiff's confinement in the three man cell does not deprive him of a constitutional liberty interest or a state-created liberty interest to which due process could attach.

In short, Plaintiff fails to set forth facts sufficient to render any procedural due process or substantive due process claim plausible against Defendants. Consequently, the Court should **DISMISS** his due process claims.

## II.     Federal Tort Claims Act Claims

Plaintiff also states that he is bringing his claims under the FTCA.  The FTCA waives the federal government's sovereign immunity as to negligent or wrongful actions by its employees within the scope of their official duties, where a "private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  However, the Eleventh Circuit has made clear that "constitutional claims are not cognizable under the FTCA's jurisdictional provision, and the United States is not liable for damages under the FTCA for suits arising out of constitutional violations."  Treece v. Wilson, 212 F. App'x 948, 951 (11th Cir. 2007) (citing FDIC v. Meyer, 510 U.S. 471, 478 (1994); Couden v. Duffy, 446 F.3d 483, 499 (3d Cir.2005); and Williams v. United States, 242 F.3d 169, 175 (4th Cir. 2001)); see also Trupei v. United States, 239 F. App'x 489, 493–94 (11th Cir. 2007) (pro se prisoner's Eighth Amendment claim was not cognizable under the FTCA). Here, Plaintiff's Complaint only asserts constitutional claims which are not cognizable under the FTCA.

Furthermore, there are exceptions to the FTCA's waiver of sovereign immunity, and, of import in this case, is 28 U.S.C. § 2680(a), or the discretionary function exception.  The FTCA does not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether . . . such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether . . . the discretion involved be abused.

28 U.S.C. § 2680(a).  "If the discretionary function exception applies, the FTCA claim must be dismissed for lack of subject matter jurisdiction."  Lambert v. United States, 198 F. App'x 835, 839 (11th Cir. 2006).  A two-part test is used to determine whether the discretionary function

exception applies, and thus, whether a cause of action against the United States is barred.  First, "the nature of the conduct" is considered, and then it is determined "whether [the conduct] involves an element of judgment or choice."  Cohen v. United States, 151 F.3d 1338, 1341 (11th Cir. 1998) (internal punctuation and citation omitted).  "Government conduct does not involve an element of judgment or choice, and thus is not discretionary, if 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive.'"  Id. (quoting Ochran v. United States, 117 F.3d 495, 499 (11th Cir. 1997)).  Second, "if the conduct at issue involves the exercise of judgment, [a court] must determine whether that judgment is grounded in considerations of public policy."  Id.  "In making this determination, [courts] do not focus on the subjective intent of the government employee or inquire whether the employee actually weighed social, economic, and political policy considerations before acting."  Id.  Instead, courts "focus on the nature of the actions taken and on whether they are susceptible to policy analysis."  Id.

In Cohen, which concerned the plaintiff's assertions regarding classification issues and an assault at the hands of another prisoner, the Eleventh Circuit Court of Appeals noted that, "even if 18 U.S.C. § 4042 imposes on the [Bureau of Prisons] a general duty of care to safeguard prisoners, the [Bureau of Prisons] retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception."  151 F.3d at 1342.  In other words, "even though a statute or regulation imposes a general duty on a government agency, the discretionary function exception may still apply if the agency retains sufficient discretion in fulfilling that duty."  Id.  The Eleventh Circuit specifically rejected the argument that Section 4042 sets forth "any required nondiscretionary actions" and that this statute "imposes a non-

discretionary duty of care on the [Bureau of Prisons] which removes this case from the discretionary function exception." Id. at 1343.

The Eleventh Circuit also looked to 18 U.S.C. § 4081 in Cohen, which provides for "the proper classification and segregation of Federal prisoners according to the nature of the offenses committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed to such institutions." Id. (quoting 18 U.S.C. § 4081). The Court of Appeals determined that this statute does not "mandate a specific, non-discretionary course of conduct in classifying prisoners", but this statute does "give the BOP ample room for judgment[.]" Id. The Eleventh Circuit also determined that the Bureau of Prisons' decision-making authority regarding how to classify and locate prisoners is "part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons." Id. at 1344 (citing Bell, 441 U.S. at 547). Several other courts have found that Bureau of Prisons' decisions regarding where to house inmates and how to classify them fall within the discretionary function exception to the FTCA. See, e.g., Addison v. United States, No. CV211-176, 2012 WL 2863434, at *3 (S.D. Ga. Apr. 16, 2012); Ballester v. United States, No. CIVA101CV-2712-JOF, 2006 WL 3544813, at *2 (N.D. Ga. Dec. 8, 2006) (dismissing claims based on placement of third person in plaintiff's cell and noting that "the transfer and placement of prisoners normally falls under the discretionary functions exception of the FTCA.").

Plaintiff's citation to Bureau of Prisons' Program Statement 1060.11 does not nullify the discretionary function exception. Contrary to Plaintiff's assertion, that program statement does not specifically prescribe a course of action as to the number of inmates that can be housed in a cell. Rather, the program statement "establish[es] procedures for determining and reporting each

institution's rated capacity and its total capacity." Federal Bureau of Prisons, U.S. Dep't of Justice, Program Statement 1060.11, Rated Capacities for Bureau Facilities (1997). As the Regional Director explained in response to Plaintiff's administrative appeal, "rated capacity is based upon a square footage measurement for rooms or cells, and does not mandate the number of inmates who can be assigned to a living area or institution. Rather, it provides a means of measuring the degree of overcrowding." (Doc. 1-4, p. 2.) Program Statement 1060.11 does not mandate a specific, non-discretionary course of conduct for housing prisoners, and the Bureau of Prisons retains sufficient discretion in fulfilling that duty.

The decision to house Plaintiff in a three man cell involves an element of judgment or choice, and that judgment is grounded in considerations of public policy inherent in the "endeavor of maintaining order and preserving security within our nation's prisons." Cohen, 151 F.3d at 1344. Plaintiff's "second-guessing of the BOP's discretionary decisions is the type of thing avoided by the discretionary function exception, which is designed to 'prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Id. at 1344 (quoting United States v. Gaubert, 499 U.S. 315, 323 (1991)). Consequently, even if Plaintiff had asserted a cognizable FTCA claim, that claim would be barred by sovereign immunity, and the Court would lack jurisdiction.

For all of these reasons, the Court should **DISMISS** Plaintiff's FTCA claims.

III.    **Leave to Appeal *In Forma Pauperis***

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[2] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these

_____

[2] A certificate of appealability is not required in this Bivens action.

17

issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not take in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Or, stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should be **DENIED**.

## CONCLUSION

For the numerous reasons set forth above, I **RECOMMEND** that the Court **DISMISS** Plaintiff's cause of action for failure to state a claim and **DENY** Plaintiff leave to appeal *in forma pauperis*.

The Court **ORDERS** that any party seeking to object to this Report and Recommendation file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address

any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 15th day of January, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA